ARTHUR L. STEWART *vs.* ALEXANDER CAMPBELL & another.

| 58 | 439 |
| 89 | 481 |
| 58 | 439 |
| 91 | 177 |

*Statute of frauds—what is within.*

A verbal promise to pay the debt of another, in consideration of funds in the hands of the party promising, is not within the statute of frauds, and may be enforced.

But a verbal promise to pay the debt of another, in consideration of forbearance of the creditor to sue the debtor, is within the statute of frauds, and cannot be enforced.

Thus, the plaintiff's debtor, having a debt against one D., and a lien therefor upon a vessel which D. was building for the defendants, told the plaintiff that inasmuch as D. had refused to pay the plaintiff's demand, according to a previous promise, the plaintiff should have the benefit of his lien-claim. Whereupon, the defendants told the plaintiff that they did not want the vessel detained for so small a bill, and promised him that if D., upon his return, did not pay him the sum owed by his debtor, they would see it paid. The plaintiff did not discharge his debtor, nor did his debtor release D. or his lien on the vessel, though he did not enforce it as he would have done, had he not believed the debt would be paid by D. or the defendants. In an action to recover of the defendants the plaintiff's debt against his debtor; *Held,* that the promise is within the statute of frauds.

ON REPORT.

ASSUMPSIT on an account annexed, of the following tenor:

1861, Oct. 20. To amount which you agreed to pay me for Alfred Sprowl, if he would not sue his account and lien-claim on schooner "Campbell," $21.50. 1867, Oct. 1. Interest to date, $7.70. Making a total of $29.20.

There was also a special count for the same sum.

It appeared from the deposition of Alfred Sprowl,

That he worked on the schooner " Campbell " for Amos Dyer, in the spring of 1861; that when the schooner was launched, Dyer owed him about $40; that in May deponent purchased a cook-stove of the plaintiff for $21.50, promising to pay him when the " Campbell " should be launched; that Dyer agreed to pay the plaintiff for the stove, but about the time the vessel was launched Dyer left for New York.

That within four days after the schooner was launched, the deponent notified the defendants that he had a lien-claim against the vessel; that Dyer had agreed to pay a bill at the plaintiff's, and had not done it, and that if it was not paid, the deponent would take advantage of the lien-claim on the vessel; that defendants said they did not want the vessel stopped for that amount, and that they would fix the bill at plaintiff's; that the Campbells said they had not settled with Dyer, but supposed they owed him $300; that they then went to plaintiff's store, and Stewart took Campbell for pay for the stove.

That in consequence of the foregoing arrangement of Campbell to satisfy plaintiff for his claim against the deponent, the deponent forbore to sue his lien-claim upon the vessel; and that he never received the balance from Dyer or any other person.

It appeared from the plaintiff's deposition,

That he sold Sprowl a cook-stove to do cooking for the men whom he employed on the " Campbell;" that when the time for payment had expired, Sprowl desired the plaintiff to give up the security on the stove and take his lien-claim on the vessel.

That when the vessel was launched, Dyer came with Sprowl and agreed to pay the amount Sprowl owed the plaintiff, and the same night Dyer returned and said he could not pay as agreed, because he could not get the money; that plaintiff told Sprowl of Dyer's retraction, and Sprowl said plaintiff should have to use the lien-claim to make the money out of it; that Sprowl, after going to see the Campbells, wanted to know if plaintiff would give up the lien-

claim if they would become responsible; that the plaintiff responded he would; that D. W. Campbell and Sprowl came, and the plaintiff thinks the first words Mr. Campbell said were, that Sprowl had told him that the plaintiff was going to stop the vessel; that Campbell said they had built a large interest in the vessel, and did not want her stopped for so small a bill, for they had paid too much in to have the vessel detained; that Dyer was away, and that if he, Dyer, did not pay the money, as he had told Sprowl and Campbell he would, they would see it paid; that plaintiff asked Campbell if they wanted it charged to the company, and he said he did not, for he knew Mr. Dyer would pay the money.

The defendant's evidence sufficiently appears in the opinion.

The court to give judgment as the law and facts required.

*J. A. Milliken*, for the plaintiff, cited *Cabot* v. *Haskins*, 3 Pick. 93; *Sumner* v. *Williams*, 8 Mass. 200; *Lent* v. *Padelford*, 10 Mass. 230; *Leonard* v. *Verdenburg*, 8 Johns. 29; *Farly* v. *Cleaveland*, 4 Cow. 432; 1 Pars. on Con. 357; *Babcock* v. *Wilson*, 17 Maine, 376; *Russell* v. *Babcock*, 14 Maine, 138; *Davenport* v. *Mason*, 15 Mass. 15; *Goodspeed* v. *Fuller*, 46 Maine, 144; *Rowe* v. *Whittier*, 21 Maine, 545; *Sanborn* v. *Morrill*, 41 Maine, 467; *Nelson* v. *Boynton*, 3 Met. 396.

*George Walker*, for the defendant.

APPLETON, C. J. The plaintiff had a debt against one Sprowl. Sprowl had a debt against one Dyer, and a lien therefor upon a vessel he, Dyer, was building for these defendants and others.

According to the plaintiff's testimony, Dyer came to his place of business and agreed to pay the amount which Sprowl owed him. Subsequently, on the same day, he informed him that he was unable to do it. The plaintiff advised Sprowl of this, who told him that he should have the benefit of his lien-claim upon the vessel, but never assigned the same. Sprowl went to see David W. Campbell, one of the defendants, who returned with him, when, according to the plaintiff's testimony, the following conversation,

which was all they had together, took place. " I think," testifies the plaintiff, " the first words Mr. Campbell said were, that Sprowl had told him I was going to stop the vessel. He said they had built a large interest in the vessel, and did not want her stopped for so small a bill, for they had paid too much money in to have the vessel detained; that Dyer was away, and that if he, Dyer, did not pay the money, as he had told Sprowl and me, that they would see it paid. I asked Mr. Campbell if he wanted it charged to the company, and he said he did not, for he knew Dyer would pay the money."

The plaintiff did not discharge Sprowl, nor does he say he did, nor did Sprowl release Dyer or his lien on the vessel, or agree to so do, though he did not enforce it as he would have done had it not been for the expectation that the debt in suit would have been paid. Dyer did not pay the plaintiff, but collected of the defendants the amount due from them, so that they have no funds of his in their hands.

By R. S., c. 41, § 1, it is provided that " no action shall be maintained . . . to charge any person upon any special promise to answer for the debt, default, or misdoings of another, . . . unless the promise, contract, or agreement, on which such action is brought, or some memorandum thereof, is in writing and signed by the party sought to be charged therewith, or by some person thereto lawfully authorized."

It is difficult to perceive why the promise of the defendants, if made as the plaintiff claims, is not within the clear and explicit language, and the true intent and meaning of the statute. The debt of Sprowl to the plaintiff, and that of Dyer to Sprowl, remained due and outstanding, and could be enforced at any moment. The defendants still remained indebted to Dyer, and the lien of Sprowl was undischarged. If the promise was to pay the debt of Sprowl to the plaintiff, that debt and the lien of Sprowl having never been discharged, it is the verbal promise to pay the debt of another, and is the very case for which the statute makes special provision.

That such is the true construction of the statute is established by the almost entire concurrence of judicial authorities. " But if C. had requested A. to forbear to sue B. for the debt, and A. had forborne accordingly, that was a good consideration at common law to support the promise, and is good since the statute if the promise be in writing." *Forth* v. *Stanton*, 1 Wms. Saund. 211. In *Watson* v. *Randall*, 20 Wend. 201, it was decided that an agreement to forbear to sue a debtor is a good consideration of the promise of a third person to pay the debt; but to render the promise obligatory, it must be in writing. "While the debt remains a subsisting demand against the original debtor, the promise of a third person is collateral, and must be in writing. The authorities are all uniform," remarks Nelson, C. J., in delivering the opinion of the court, " that the promise to pay, in consideration of forbearance, is within the statute. When there is a verbal promise to pay the amount of the debt of another, in consideration that the creditor will forbear to sue for a limited time, the forbearance is a new consideration upon which the promise is founded. But such cases are held to be within the statute." In *Nelson* v. *Boynton*, 3 Met. 396, it was held, that a promise to pay the debt of a third person, which was in suit, and secured by an attachment of personal property, in consideration of the holders discontinuing the suit, is within the statute, and so not binding unless in writing. " To bind one, therefore," remarks Shaw, C. J., " for the debt or default of another, two things must concur; first, a promise on good consideration; and, secondly, by evidence thereof in writing." The same principles are fully established in *Stone* v. *Symmes*, 18 Pick. 467, and *Curtis* v. *Brown*, 5 Cush. 488. This view of the statute was adopted in *Harrington* v. *Rich*, 6 Verm. 666. In *Jones* v. *Walker*, 13 B. Mon. 357, the supreme court of Kentucky held, that if the debtor be discharged, and the defendant promise to pay the creditor the debt thus discharged, that it is not within the statute; but when the original debt is not extinguished, nor the original debtor discharged till payment is made by the party promising to pay, it is within the statute. In *Waggoner* v. *Gray*, 2 Hen. & Mumf. 603, the facts were

these:  one  Gray,  the  defendant's  intestate,  being  indebted  to
Slaughter,  and  Slaughter  to  Waggoner,  the  plaintiff,  Gray,  in  con-
sideration  of  his  debt  to  Slaughter,  promised  the  plaintiff  to  pay
the  debt  of  Slaughter  to  him ;  but  the  plaintiff  did  not  thereupon
discharge  Slaughter,  and  the  promise  of  the  defendant  was  held  to
be  collateral  and  void  by  the  statute  of  frauds.   " The  distinction,"
says  Roane,  J.,  " seems  to  be,  that  when  the  person,  in  whose  be-
half  the  promise  is  made,  is  not  discharged,  but  the  person  promis-
ing  agrees  to  see  the  debt  paid,  so  that  the  promise  has  a  double
remedy,  the  promise  is  collateral,  and  must  be  in  writing."   This
view  of  the  law  was  subsequently  affirmed  in  *Ware*  v.  *Stephenson*,
10  Leigh,  155,  and  in  *Noyes*  v.  *Humphries*,  11  Grattan,  643.   The
general  rule  is,  that  as  long  as  the  debt  of  the  person,  for  whom
the  promise  is  made,  remains,  the  promise  is  collateral.   " The
statute,"  remarks  Parke,  B.,  in  *Hargreaves*  v.  *Parsons*,  13  Mees.
&  Welsb.  560,  " applies  only  to  promises  made  to  the  persons  to
whom  another  is  already  or  is  to  become  answerable.   It  must  be
a  promise  to  be  answerable  for  a  debt  or  default  in  some  duty  by
that  other  person  towards  the  promisee."

There  is  a  species  of  novation,  called  delegation,  in  the  civil  law,
which  " is  effected  by  the  intervention  of  another  person,  whom
the  debtor,  in  order  to  be  liberated  from  his  creditor,  gives  to  such
creditor,  or  to  him  whom  the  creditor  appoints,  and  such  person  so
given  becomes  obliged  to  the  creditor  in  place  of  the  original  debt-
or."   Burge  on  Suretyship,  173.   But  it  is  necessary  that  there
should  be  the  concurrence  of  the  person  delegating,  that  is,  of  the
original  debtor  and  of  the  person  delegated,  or  the  person  whom  he
appoints.   The  intention  of  the  creditor  to  discharge  the  first  debt-
or  and  accept  the  second  in  his  place,  must,  in  order  to  give  effect
to  the  delegation,  be  perfectly  evident."   Ib.·174.   There  are  au-
thorities  which  show  that  the  circumstances  constituting,  under  the
Roman  law,  a  delegation,  sustain  the  promise  of  a  third  person  to  pay
a  debt  of  another  to  his  creditor,  when  that  debt  has  been  extin-
guished,  and  the  debt  of  the  person  promising  has  been  substituted
upon  sufficient  consideration  therefor.   But  there  must  be  the  mu-

tual assent of all parties to make the substitution effectual at common law. *Butterfield* v. *Hartshorn*, 8 N. H. 348. In *Tatlock* v. *Harris*, 3 D. & E. 180, Buller, J., says, "suppose A. owes B. £100, and B. owes C. £100, and they meet, and it is agreed between them that A. shall pay C. £100, B.'s debt is extinguished, and C. may recover the same against A." "If," says Cloudman, J., in *Bird* v. *Gammon*, 3 Bing. N. C. 883, "debtor, creditor, and a third party agree that the third party shall be substituted for the debtor, the debtor is exonerated. *Fairlee* v. *Denton*, 8 B. & C. 395, has decided that, establishing to that extent an exception to the rule that debts cannot be assigned." 1 Parsons on Contracts, 187. Such promises are not within the statute; but in the present case no such promise is proved on the part of the defendants, for no debts have been discharged, nor was the promise of the defendant unconditional, according to the statement of the plaintiff to whom it was made.

In accordance with these views are the decisions of this court. It was held, in *Plummer* v. *Lyman*, 49 Maine, 229, that a parol promise to accept an order from a debtor in favor of his creditor, between whom and the maker of the promise there had been no privity, was within the statute of frauds as a promise to pay the debt of another. Thus, where A. had a claim on a vessel for materials used in building it, and B. held the vessel to secure him for advances made to the builder, a promise by B. to accept the order of the builder in favor of A., for the amount of his claim, cannot be enforced, unless it appears to have been for some consideration, such as a discharge of A.'s lien on the vessel, or his promise to discharge it, or release his claim upon the builder. In the case at bar there was no discharge of lien or promise to discharge or release of the defendant of the amount in controversy. In *Richardson* v. *Williams*, 49 Maine, 558, A. being indebted to B., C. verbally promised B. to pay him the amount, and charged it to A. without the consent of the latter. It was held that B., not having released or assigned his debt, the promise was without consideration, and that such promise was within the statute of frauds, and not binding. In *Furbish* v. *Goodenow*,

98 Mass. 297, it was decided, that an oral promise to pay the debt of another is within the statute of frauds, if the original promisor remains liable, and no consideration moves from the creditor to the new promisor, although there is a valuable consideration moving from the original debtor to the new promisor. But here there is no consideration moving from anybody to the defendant.

But it is urged that these views are at variance with the current of judicial decisions in this State, and reliance is placed upon numerous decisions by our courts. In *Russell* v. *Babcock*, 14 Maine, 139, it was held, that an agreement to delay the collection of an execution was a sufficient promise by a third person to pay the same, and that such promise need not be in writing. But this decision would repeal the statute, and it has since been overruled. Referring to this decision in *Hilton* v. *Dinsmoor*, 21 Maine, 410, Shepley, J., uses the following language: "If this was in reality the ground of the decision in that case, and the abstract of the reporter is to that effect, we are constrained to say it is unsupported by the authorities." To the same effect was the case of *Doyle* v. *White*, 26 Maine, 341.

In *Dearborn* v. *Parks*, 5 Greenl. 81, the debtor of the plaintiff left funds in the hands of .the defendant, with which he was to pay his (the debtor's) debt to the plaintiff. ·The defendant receiving these funds, or being allowed for them in settlement, as if paid to the plaintiff, promised to pay them to the plaintiff. The plaintiff, therefore, had funds in the defendant's hands, placed there for his benefit, for which he might well maintain a suit. In *Hilton* v. *Dinsmoor*, 21 Maine, 210, the consideration of the defendant's promise was forbearance to sue, and funds placed by the debtor in the defendant's hands with which he was to pay the debt. The court held the promise in consideration of forbearance was within the statute, but the funds having been placed in the defendant's hands by the plaintiff's debtor, the promise of the defendant in consideration thereof was not within the statute. In *Rowe* v. *Whittier*, 21 Maine, 545, notice was taken of the fact that the plaintiff had not discharged his debt against his debtor, which he sought to

enforce against the defendant. " If," says Whitman, C. J., " the claim was a legal one against Patten & Co. (the debtors of the plaintiff), it does not appear that they were discharged from it in consideration of the promise made by the defendant, and if it had so appeared, the defendant not being otherwise liable, his promise would not have been obligatory under the statute of frauds without a memorandum in writing." In *Brown* v. *Atwood*, 7 Greenl. 356, where S. sold a vessel to A., who promised in consideration thereof to pay B. a debt due from S., upon which promise B. brought his action against A., it was held that such promise was good, though not in writing, for it was a promise to pay his own debt, though enuring to the benefit of B. The plaintiff had funds in the defendant's hands, left by his debtor, and might well call them out. In *Maxwell* v. *Haynes*, 41 Maine, 559, the plaintiff's debtor sold out to defendant, leaving funds in his hands to pay his debt to the plaintiff. In all these the defendant held funds of the debtor in his hands designated and set apart for the payment of his debt, and held by the defendant for that purpose. In *Fullam* v. *Adams*, 37 Verm. 391, Poland, C. J., referring to this class of cases, says, " And we believe it will be found that in all the cases now regarded as sound, when it has been held that a parol promise to pay the debt of another is binding, the promisor held in his hands funds, securities, and property of the debtor devoted to the payment of the debt, and his promise to pay attaches upon his obligation or duty, growing out of the receipt of the fund."

Now this action cannot be sustained upon the doctrines of the cases last referred to upon which reliance is placed for that purpose. The debt of the defendant to Dyer was not discharged, and he has since paid it. The same is the case with the claim of Sprowl against Dyer, and of the plaintiff against Sprowl. No action or right of action is discharged, and there never has been a time when each creditor might not have successfully maintained an action against his debtor.

Nor can the plaintiff recover on the ground that funds have been placed in the defendants' hands to meet this specific debt. Dyer

placed none there, nor did Sprowl, nor in fact have the defendants the funds of anybody with which to meet this debt.

If Sprowl neglected to enforce his lien, it was not in consequence of any agreement not to do it, or any release of it. The case shows nothing that would have been a bar to its enforcement at any time.

There is a class of cases, as in *Alger* v. *Scoville*, 1 Gray, 391, in which it was held, that the promise to a debtor to pay his debt to a third person is not a promise to answer for the debt of another within the statute. So in *Pike* v. *Brown*, 7 Cush. 136. In *Eastwood* v. *Kenyon*, 11 A. & E. 446, it was held, that a promise by the defendant to the plaintiff to pay A. B. was not within the statute. " The facts were," says Lord Denman, " that the plaintiff was liable to a Mr. Blackburn on a promissory note ; the defendant for a consideration, which may for the purpose of the argument be taken to have been sufficient, promised the plaintiff to pay and discharge the note. to Mr. Blackburn. If the promise had been made to Mr. Blackburn, doubtless the statute would have been applied, and it would then have been strictly a promise to answer for the debt of another ; and the argument on the part of the defendant is, that it is not less the debt of another because the promise is made to that other, viz., the debtor and not to the creditor, the statute not having in terms stated to whom the promise contemplated by it is to be made. But upon consideration we are of opinion that the statute only applies to promises made to the person to whom another is answerable." But the promise here is not made to Dyer nor to Sprowl, and when made, as in the present case, is within the statute.

According to the facts, as stated by the plaintiff in his testimony, and the law as applicable to these facts, he cannot on his own showing maintain this suit. Still less can he do it, if the testimony of the defendant is deserving credit.

The defendant's testimony is as follows : " Sprowl wanted me to go into Mr. Stewart's, and he spoke about this lien-claim ; as near as I can recollect, I told him that I did not know whether he had

a claim on the vessel. I had only his word for it, but rather than have any trouble about the claim, I would pay Stewart, provided he would first satisfy me that it was due from Dyer. I required him to settle with Dyer so that we could charge Dyer. Whatever promise I made was upon this condition. I so understood it and so intended to be understood. We paid no bill, that I recollect of, without their being first audited by Dyer or on his order." No order from Dyer was obtained, nor did Sprowl settle with him. After some time elapsed, Dyer presented his bill, which the defendants paid.

Upon the defendant's version of the transaction he is exempt from liability. His promise was to Sprowl, if to any one, and it was upon condition. The condition was never performed, so that no liability ever attached, and the suit is not in the name of Sprowl. The statement of the defendant has the greater marks of probability, and is more in accordance with the natural course of business. The burden is on the plaintiff to prove the facts necessary to establish his case, and we think he has failed to do it, and upon this ground, if on no other, the plaintiff must fail.

KENT, J., concurred.

WALTON, J. It is perfectly well settled in this State that when a promise to pay the debt of another is founded on a new consideration beneficial to him who makes the promise, such a promise is not within the statute of frauds. "A person who receives a consideration may be bound by any lawful promise founded upon it, and that promise may as well be to pay another's debt as to do any other act." This promise may be absolute or conditional; to pay money or perform labor; and having a valuable consideration of its own to rest upon, it is a new, original, and independent undertaking, and may, like any other lawful contract, be enforced in law, or damages recovered for the breach of it.

Thus, where the defendant took a conveyance of land, and in part consideration thereof promised to pay a note from the grantor

to a third person, it was held that the promise was not within the statute of frauds.  *Dearborn* v. *Parks*, 5 Greenl. 81.

So, where the debtor sold a vessel to the defendant, who, in consideration thereof, promised to pay the plaintiff's debt, it was held that the promise was obligatory, though not in writing.  *Brown* v. *Atwood*, 7 Greenl. 356.

And it was held in one case, that an agreement to delay the collection of an execution against one was a sufficient consideration for a promise by another to pay the amount thereof, and that such a promise was not within the statute of frauds.  But the correctness of this decision may well be doubted, unless it can be sustained upon the ground that the defendant had security for his undertaking.  There was evidence that he said the debtor had secured him. *Russell* v. *Babcock*, 14 Maine, 138.

In a later case, where the defendant promised to pay the debt of a third person in consideration of property put into his hands, as well as forbearance to sue, the promise was held not to be within the statute of frauds; but it was denied that forbearance alone would take the case out of the operation of the statute.  *Hilton* v. *Dinsmore*, 21 Maine, 410.

And in a still later case, where the debtor had been logging for the defendants, and in the spring sold out all his "fixings" to them, and they promised to pay all his bills, it was held that their promise was obligatory, and one of the creditors recovered his debt in a suit against them.  *Maxwell* v. *Haynes*, 41 Maine, 559.

In a recent case in Massachusetts, it was held that an oral promise to pay the debt of another is within the statute of frauds, if the original debtor remains liable and no consideration moves from the creditor to the new promisor, although there is a valuable consideration moving from the original debtor to the new promisor.  *Furbish* v. *Goodnow*, 98 Mass. 296.  But it is conceded in the opinion of the court in that case that the law is otherwise in New York, Vermont, and Maine.

In a recent case in New York, the court of appeals reviewed the authorities in a full, clear, and able manner, and the court held

that " a person who receives a consideration may be bound by any lawful promise founded upon it, and that that promise may as well be to pay another's debt as to do any other act." Three members of the court were in favor of adhering to an earlier decision in which it had been held that injury to the creditor alone was a sufficient consideration to uphold such a promise, as where he relinquished security; but a majority of the court held that it must be a beneficial consideration moving to the party promising. *Mallory* v. *Gillett*, 21 N. Y. 412.

The difficulty in this case is, that the evidence fails to establish any consideration whatever for the defendants' promise. At least, such is the opinion of a majority of the court. It is true, that the plaintiff's debtor pretended to have a lien on the defendants' vessel, but the evidence fails to establish such lien; or, if he had one, that he discharged it. So far as appears, therefore, there was no consideration whatever for the defendants' promise, if one was in fact made, which they emphatically deny. It is clear, therefore, that the plaintiff cannot recover. *Plaintiff nonsuit.*

CUTTING, DICKERSON, and DANFORTH, JJ., concurred in the result.