# HILL BROTHERS, Respondents, v. BANK OF SENECA, Appellant.

## St. Louis Court of Appeals, March 17, 1903.

1. **Agreement to Thresh Wheat: STATUTE OF FRAUDS, NOT WITHIN.** An agreement by defendants to pay plaintiffs for threshing wheat mortgaged to them, was not brought within the statute of frauds as a special promise to answer for the debt of another, because it included an agreement to pay for wheat previously threshed by plaintiffs under agreement with the mortgagor.

2. ———: **INSTRUCTION, NOT PREJUDICIAL.** In an action to recover balance due for threshing wheat, an instruction that the jury were to find for the plaintiffs, if defendant contracted to pay for the threshing (on taking possession of the wheat), was not prejudicial to defendant in assuming that the contract was made when possession was taken, when in fact it was made on the next day.

3. ———: **CONTRACT BETWEEN MORTGAGOR AND MORTGAGEE: PLAINTIFF ENTITLED TO RECOVER FOR THRESHING WHOLE CROP.** Where mortgagee contracted to pay plaintiffs for threshing the entire crop of wheat mortgaged, plaintiffs were entitled to recover for threshing the whole crop, and the fact that the agreement with the mortgagor by which the mortgagee took possession of the wheat, authorized it to incur expense only so far as was necessary to market enough wheat to satisfy the mortgage, of which agreement plaintiffs had knowledge, was immaterial.

4. ———: ———: **AGENT'S DECLARATIONS, COMPETENT.** In an action to recover the balance due for threshing wheat mortgaged to defendant, declarations of defendant's agents while still acting within the scope of their agency, that defendant was going to pay for threshing, were competent.

5. ———: **EVIDENCE EXCLUDED, HARMLESS, WHEN.** Where facts relating to a mortgage were made to appear by oral testimony, the exclusion of the mortgage was, if oral, harmless.

6. ———: **VERDICT MUST ASSESS DAMAGES: INSTRUCTIONS.** Where the jury returned a verdict for plaintiffs without assessment of damages, the court properly refused to receive it, and directed the jury that they must assess the damages without further instructions.

7. ———: **CROP OF WHEAT, MORTGAGED: NEW AGREEMENT: AGENCY DETERMINED, THEREAFTER NOT BINDING.** Plain-

tiffs were engaged by defendant to thresh a crop of wheat mortgaged to it, defendant's agent having charge of the work. After thresh-ing a sufficient quantity to satisfy defendant's claims, a contract was entered into between plaintiffs and a subsequent mortgagee of the wheat, whereby the latter was to pay for all wheat threshed thereafter, plaintiffs retaining sufficient grain to secure their claim. Pursuant to this agreement, plaintiffs held two carloads of wheat, which they finally let go, on a promise by defendant's agents, whose agency had in the meantime terminated, which fact plaintiffs knew, that defendant would pay for the same. *Held*, that plaintiffs could not by relying on the promises made by defendant's former agents, recover for the wheat threshed subsequent to the new agreement.

Appeal from Newton Circuit Court.—*Hon. H. C. Pepper*, Judge.

AFFIRMED (*conditionally*).

*George Hubbert* and *O. L. Cravens* for appellant.

(1) Such signed writing as the statute requires must contain all essential elements of the contract, including the agreed consideration, or the memorandum must be held fatally defective. Kelly v. Thuey, 143 Mo. 422; Boyd v. Paul, 125 Mo. 9; Ringer v. Holtzclaw, 112 Mo. 519. (2) So it is where the action was for work under specific contract set out, with statement of credits of payments, asking judgment for balance. By such petition plaintiff "invites examination into the amount of indebtedness and the extent of the reduction thereof by payments," and under general denial defendant may prove "all payments" made in fact. Quin v. Lloyd, 41 N. Y. 349; White v. Smith, 46 N. Y. 418; Pomeroy Rem., secs. 691, 699, 700; McElmee v. Hutchinson, 10 S. Car. 436. (3) Even where matter relied on is new and should be pleaded to render evidence relating thereto admissible, yet, if the evidence was admitted on the trial without objection, as if competent under the general denial, or as if specially pleaded, the question of such defense not being specially pleaded was waived by the failure of plaintiffs to object. Ricketts v. Hart, 150 Mo. 64; Peck v. K. C. Roofing Co., 70

S. W. 168; Madison v. Railroad, 60 Mo. App. 599; Stewart v. Goodrich, 9 Mo. App. 125; Hill v. Meyer, 140 Mo. 433; Hardwick v. Cox, 50 Mo. App. 509. (4) Statements made by the agent, to be binding on the principal, must have been made with reference to and within his authority as agent. Not every statement, representation or admission which the agent may choose to make, is binding on the principal. Mechem on Agency, secs. 714, 716; Midland L. Co. v. Kreeger, 52 Mo. App. 418; Foley v. Bulware, 86 Mo. App. 674. (5) This was long after Daugherty and Reynolds had ceased to act as agents for defendant, and no agent of the bank was present. Such error must work a reversal. Bevis v. Railroad, 26 Mo. App. 19; McDermott v. Railroad, 73 Mo. 516; Adams v. Railroad, 74 Mo. 553; Aldridge v. Midland, etc., Co., 78 Mo. 559.

*John T. Sturgis* and *J. H. Keith* for respondents.

(1) "It is clear that it [statute of frauds] would be unavailing, for the evidence shows an undertaking on the part of the defendant to pay for the work independently of the previous contract which subsisted between plaintiff and Meisch, and it equally shows that they went on and completed the work on the faith of this undertaking. The evidence in no sense makes an undertaking collateral to that of Meisch. There was no promise to answer for the debt or default of Meisch— no promise to pay in case Meisch did not pay, but an independent promise to pay at all events in case the work should be done." Jefferson v. Slagle, 66 Pa. St. 202; Calkins v. Chandler, 36 Mich. 324; Clifford v. Luhring, 69 Ill. 401; Green v. Burton, 59 Vt. 423; Crawford v. Edison, 45 Ohio St. 239; Kelley v. Schepp, 60 Wis. 76. (2) When the jury find for a party on one theory, then an erroneous instruction on another theory not adopted by the jury is harmless. Globe Light Co. v. Daud, 47 Mo. App. 439; Brandon v. Carter, 119 Mo. 572; Bogges

v. Railroad, 118 Mo. 328; Sawyers v. Drake, 34 Mo. App. 472.   (3)   ''What an agent says when acting for his principal within the scope of his real or ostensible authority with reference to a given matter touching the subject of his agency, is always admissible in evidence as part of the *res gestae*—just as much as the declaration of the principal if so acting for himself would be admissible.''   Meagher v. Railroad; 14 Mo. App. 499; Beardslee v. Steinmesch. 38 Mo. 168; Robinson v. Walton, 58 Mo. 380; Peck v. Richey,,66 Mo. 114; Hawk v. Applegate, 37 Mo. App. 32; 1 Ency. Law (2 Ed.), p. 691.   Especially where the party is referred to such agents for information.   Price v. Lederer, 33 Mo. App. 426.

GOODE, J.—Many of the facts of this case are stated in the report of the decision of a former appeal (87 Mo. App. 590); but as the case came to this court then from a judgment rendered by the court below in favor of the bank on a demurrer to the plaintiffs' evidence, the facts to support the defense on the merits were not before us and were not embraced in the statement of facts then made.

The question for our determination on that appeal was whether the plaintiffs' evidence made a case for submission to the jury, and we held that it did, reversing the judgment and remanding the cause to be retried; which imposed on the defendant, of course, the necessity of introducing evidence to maintain its defenses pleaded in the answer.

To recapitulate to some extent the principal facts will assist a reader to understand the controversy.   The action was brought to recover from the defendant bank an unpaid balance of the cost of threshing about thirty-four thousand bushels of wheat.   This wheat was raised by W. A. Richardson on thirty-nine hundred acres of land in the Indian Territory near Catoosa.   Richardson had given two mortgages on the growing crop to

the Bank of Seneca, one dated February 12, 1898, to secure a promissory note for $1,500 maturing May 16, the other dated April 19, 1898, to secure a promissory note for $3,000, due ninety days after date; that is to say, July 19th.

J. M. Berry, cashier of the bank, went to Catoosa on July 2d to look after the bank's security on receipt of information that some of the wheat had been shipped by Richardson. Before that date, Richardson had employed the plaintiffs, a firm composed of O. W., L. W. and F. W. Hill, doing a threshing business under the style of Hill Brothers, to thresh the crop; they had begun the work on June 22d and had threshed about five thousand bushels, as the fuller evidence discloses, when Berry appeared on the scene. At that time Hill Brothers had their machines in the field, threshing was in full progress, Richardson had shipped several carloads of the cleaned wheat to St. Louis and had some on hand. He agreed to pay the plaintiffs seven cents a bushel for threshing. Berry found Richardson in the wheat field near the machine and had an interview with him, the result of which was that Richardson surrendered possession of the wheat to Berry as the bank's representative. This was done by the following indorsements, the first of which was made on the back of the mortgage dated February 12th, and the second on the back of the one dated April 19th.

"Possession of the within described property is hereby delivered to the Bank of Seneca, Missouri, they through their representative, T. M. Reynolds & Co., to attend to the within threshing of the wheat and selling same and paying all further bills and expenses, receiving full possession of all sales until the indebtedness to the Bank of Seneca, Missouri, is paid in full.

"Delivery of possession of the cattle is also made; agreement upon my part to cut them out from other cattle is also made when requested to do so by the bank or its agent, Reynolds & Company.

"Dated July 2, 1898; 4:45 p. m.

"Witness: O. W. Hill.    W. A. RICHARDSON.

"Possession of the within described property is hereby given in full to the Bank of Seneca, Missouri, through its cashier J. M. Berry, who through himself or representative is to attend to the further threshing of the wheat, loading and billing of same and is to receive full proceeds of sale of wheat until all the indebtedness due said bank is paid in full and all the expenses of threshing, hauling, loading, freight, commission, labor and other things are paid."

(Signed)                "W. A. RICHARDSON."

When Berry took possession of the wheat he first put the plaintiff in charge as his agents, but the next day he again went to the field in company with T. M. Reynolds and Thomas Dougherty, a firm doing business at Catoosa under the style of T. M. Reynolds & Company, and on that date, July 3d, he took the wheat out of the hands of Hill Brothers and put it in charge of Reynolds & Company as the bank's agents. At the same time Berry made the contract with the plaintiffs in regard to the threshing on which this action is founded.

The testimony for the plaintiffs is, in substance, that Berry said to O. W. Hill: "That wheat I put in your hands yesterday I will take out and put in Mr. Dougherty's hands. Go ahead with the threshing and look to the Bank of Seneca for the pay for we will pay you for the entire crop." Berry had previously notified O. W. Hill of the bank's mortgages and that he was the cashier of the bank. Thereafter the plaintiffs continued the threshing, the wheat was shipped and sold by Reynolds & Company and the proceeds applied to the payment of the indebtedness to the Bank of Seneca until July 15th, when that bank had realized enough money to discharge its notes. Meanwhile Reynolds & Company, as the bank's agents, had paid the plaintiffs on account of the threshing $1,062. After the execution of the mortgages to the Bank of Seneca, Richardson had

made a mortgage to Reynolds & Company and still later, on July 15th, he gave another mortgage to the bank of Coffeyville, Kansas, of which J. T. Wettack was cashier. Richardson owed the Bank of Coffeyville, and Wettack went to the Indian Territory to look after the indebtedness held by that bank as Berry had gone to look after that owing to the Bank of Seneca.

On July 15th, an arrangement was made between the Bank of Seneca, Reynolds and Wettack, as the representative of the Coffeyville Bank, by which the possession of the wheat was delivered to the latter concern, which was to be paid out of the proceeds of sales after all prior liens had been discharged.

It is contended by the defendant that an agreement was made with Wettack that he should pay whatever expense was incurred thereafter for threshing the remainder of the wheat and that this arrangement was communicated to and acquiesced in by the plaintiffs, who agreed thenceforth to look to the Bank of Coffeyville for payment and not to look to the Bank of Seneca. Plaintiffs dispute this and say they had no knowledge of any such agreement and the evidence on the subject of whether they knew of it prior to August 9th is very conflicting.

Some time afterwards the plaintiffs made a draft on the Bank of Coffeyville for something over two thousand dollars, which circumstance is insisted on by the defendant as showing they looked to the Coffeyville Bank for their pay; but the testimony for the plaintiffs is that they were demanding payment from Reynolds & Company, as agents of the defendant, and were induced by them to make this draft on the Bank of Coffeyville, Reynolds & Company representing that said bank would be sure to pay it and thereby they (Reynolds and Co.) would recoup the $1,062 which had been previously paid to plaintiffs, thus forcing the Bank of Coffeyville to bear the entire expense of the threshing.

On August 9th, plaintiffs and Wettack had an un-

derstanding by which the latter agreed to pay for work done after that date and the following memorandum was executed:

"August 9, 1898.

"As cashier of the First National Bank of Coffeyville, Kansas, I agree that Hill Brothers may retain seven cents per bushel for all wheat that they may thresh from this date, of wheat belonging to W. A. Richardson and mortgaged to said bank, and may hold enough of said wheat to make them secure on the wheat threshed for said Richardson from this date.

"J. T. WETTACK, Cashier.

"In duplicate.

"I agree to the above contract.

"W. A. RICHARDSON."

In addition to the above credit of $1,062, defendant insists it should be credited with the sum of $250 which Richardson had paid Hill Brothers before Berry took possession, but which Hill Brothers say was applied on a debt due for threshing oats for Richardson instead of wheat. Defendant also says it is entitled to a credit of $134 paid on some machinery for the plaintiffs, but this credit seems not to be insisted on seriously.

The answer, besides a general denial, sets up the taking possession of the wheat by Berry, that part of it had been already threshed under a contract with Richardson, but that none of the wheat theretofore threshed was ever applied to the payment of the defendant's notes; that Berry took possession for the bank in order to sell such of the wheat as was necessary to pay its notes and for no other purpose; that in pursuance of that purpose Reynolds & Company were put in charge with an instruction to hold the wheat only until the bank's notes were paid and that thereafter the bank would have no further connection with it; that while the wheat was in possession of Reynolds & Company as defendant's agents, they not only paid out of the proceeds the indebtedness due the defendant, but paid the plain-

tiffs the full amount due for threshing all the wheat which went to pay the defendant's notes; that is to say, during the time the control of the crop was with the defendant, amounting to $1,064, or the cost of threshing 15,200 bushels of wheat; that afterwards Reynolds & Company notified the plaintiffs of the discharge of the bank's indebtedness, that it had relinquished the control of the crop and had nothing further to do with the threshing.

The answer further denies that the plaintiffs made any contract whatever with the bank for threshing the wheat and pleads that the alleged contract on which the plaintiffs founded their action is within the statute of frauds because it includes a promise to answer for the debt Richardson had incurred for threshing prior to the time Berry took possession.

The replication was a general denial.

The instructions will be noticed as far as seems necessary in reviewing the assignments of error.

The jury first returned a verdict in this form:

"We, the undersigned jurors, find for the plaintiff the whole amount less what has been paid."

The court refused to receive that informal verdict and so informed the jury. The deputy sheriff in charge of the jury swore he reported to the judge after the latter refused to receive the first verdict, that the jury said they could not accurately remember the figures given in the evidence and asked for further instructions; whereupon the court directed him to tell the jury he did not have any further instructions to give and they would have to do the best they could with what they had. Finally they returned a verdict in favor of the plaintiffs for $1,135.96; judgment was entered accordingly and defendant appealed.

Much of the argument addressed to us in support of the contention that this case should be reversed goes rather to the weight of the evidence, with which we have nothing to do, than to errors assigned because of rulings

made at the trial.    On the former appeal we held there
was evidence that Berry acted within the scope of his
authority in contracting with the plaintiffs, and that the
bank approved and adopted his acts.    The full evi-
dence adduced during the second trial vindicated that
conclusion and showed beyond question that, in the
main, Berry's course was both authorized and ratified.
Having already ruled that plaintiffs made a prima facie
case, we accept the jury's finding as implied in their ver-
dict, that the contract for threshing which plaintiffs
testified Berry entered into with them was, in fact,
made.    But said contract undertook to bind defendant
to pay, not only for threshing done pursuant and subse-
quent to it, but for threshing previously done under
the contract with Richardson, and defendant challenged
the validity of the agreement as including an oral prom-
ise by the defendant to pay Richardson's debt.    The
learned circuit judge declined to accept that construc-
tion, holding the agreement lay outside the statute of
frauds, and, we think, rightly.

In the first place the evidence shows that the $1,-
062.04 which both sides admit were paid on plaintiffs'
account, exactly compensated for all the work done from
the beginning to July 9th, including what was done
prior to the 3rd, when Richardson turned over the crop.
The total wheat cleaned to July 9th was 15,172 1-2 bush-
els which, at seven cents a bushel, amounted to $1,062.-
04.    Thus the evidence certainly tends to prove, if it
does not conclusively prove, that both parties fully per-
formed the agreement to pay for the work done while
Richardson was in possession; and it would be going
a long way to hold that after the part of the contract
claimed to be a promise to answer for another's debt
was executed, that executed part still had power to in-
validate the part in which the defendant is conceded to
have promised to pay only its own debts.    Further;
the Hills swore that Berry proposed, if they would go on
with the threshing, to pay them for cleaning the entire

crop; they accepted his proposition and continued the work. That was no special promise to answer for the debt of another, but a direct agreement on the part of the bank through its agent, to pay plaintiffs a stipulated compensation for a service to be rendered. It was supported by an ample consideration and was none the less valid because incidentally it would result in discharging Richardson's indebtedness for prior threshing. Yoeman v. Mueller, 33 Mo. App. 343; Winn v. Hillyer, 43 Mo. App. 139; Walther v. Merrill, 6 Mo. App. 310; Calkins v. Chandler, 36 Mich. 320; Crawford v. Edison, 45 Ohio St. 239; Clifford v. Lubring, 69 Ill. 401. The contract in this case, so far as appears, was made for the exclusive benefit of the bank and it received the benefit in the continued work of the plaintiffs. In such a case it is wholly immaterial that, in consequence of the performance of the contract, the debt of some one else will be paid, and immaterial, too, whether or not the original debtor remains liable. Leonard v. Vredenburgh, 8 Johns. 29; Dyer v. Gibson, 16 Wis. 560; Putney v. Farnham, 27 Wis. 187; Collins v. Chandler, supra; Farley v. Cleveland, 4 Cow. 432, 9 Cow. 639; Mallory v. Gillett, 21 N. Y. 412; Nelson v. Boynton, 3 Metc. 396; Stewart v. Campbell, 58 Me. 439; 1 Reed on Stat. Frauds, sec. 570; Brown, Stat. Frauds (5 Ed.), sec. 165. Several of the cases we have cited, notably Yeoman v. Mueller, Winn v. Hilyer, and Walther v. Merrill, which were decided by this court, are in no respect different from the case at bar so far as the point in hand is concerned. If the defendant agreed to pay plaintiffs for threshing the entire crop of wheat, in consideration of their continuing to thresh after defendant got possession and plaintiffs performed the contract, the defendant is as much liable for the work done before it got possession as for that done afterward.

There was, as stated, an acute conflict in the testimony as to whether plaintiffs were apprised that the defendant had realized enough cash by July 15th to satisfy

its demands, and had then surrendered possession of the remaining wheat to Wettack for the Coffeyville Bank, with the understanding that he would pay for subsequent threshing; also, as to whether plaintiffs assented to said arrangement and agreed to thereafter look to Wettack for payment. An issue was bound to be submitted to the jury as to those matters; and in three instructions requested by the defendant and presenting the issue in as many aspects, the trial court carefully advised the jury that although they found the contract was made between plaintiffs and defendant as asserted by the former, yet if they found that subsequently said arrangement was made with Wettack, and plaintiffs knew of and assented to it, they could not recover from defendant for wheat thereafter threshed. The same theory was embodied in the fourth instruction given at the plaintiffs' instance and indeed was kept in view throughout the trial with an exception which will be noticed presently.

The evidence to support defendant's contention that plaintiffs agreed to look to Wettack for their pay after July 15th may be very strong, and we are not willing to deny that it is; but there was much countervailing testimony and the verdict of the jury is the end of the matter. Even Berry did not testify positively on the subject, but swore he left Catoosa on July 15th with the impression that Wettack was to pay plaintiffs for subsequent work.

Defendant's third refused instruction was but a repetition of those given, so it was not error to refuse it.

Certain instructions given for the plaintiffs are questioned as telling the jury that if they believed the defendant contracted to pay for the threshing as contended by the plaintiffs "on taking possession of the wheat," etc., thus assuming that the contract was made when possession was taken, whereas it was made the next day, if at all. That objection is hypercritical. The

Vol 100 app—16

instructions did not make the plaintiffs' right to recover turn on a legal connection between the acquirement of possession by the defendant and its alleged agreement with the plaintiffs, but on proof of said agreement; and no harm could have resulted from the slight confusion of dates in the instructions.

The first refused instruction, in effect, construed the contract between the parties to entitle plaintiffs to pay for threshing only so much wheat as was needed to satisfy its mortgages. Perhaps that charge had better be quoted:

"The court instructs the jury that in this case the plaintiffs were entitled, under the terms of the arrangement by which Berry took control of the wheat as he found it in the Indian Territory, to have Reynolds & Company account to them for the threshing of a sufficient amount of the wheat to satisfy the Seneca Bank's mortgage debts and the expenses of threshing and marketing the wheat, and if the jury believe from the evidence that the plaintiffs did receive accounting and settlement from Reynolds & Company for threshing of such sufficient amount of the wheat to satisfy the bank's debts and expenses, then that contract must be taken as having been fulfilled, and the plaintiffs can not recover any more from defendant on acount thereof."

By what warrant the trial court could have charged that an agreement by the defendant to pay for threshing the entire crop only entitled plaintiffs to pay for threshing part of it, we know not. The argument advanced by the defendant on this point is that the agreement between Berry and Richardson as shown by the memoranda signed by the latter when he turned over the wheat, authorized Berry to incur expense only so far as was necessary in order to market enough wheat to satisfy the bank's mortgages, as the plaintiffs knew. That argument calls in question Berry's authority to represent the bank, or at least, the extent of it; although his authority was conceded on the second trial and the

case defended along other lines. It is an irrelevant argument, however; for plaintiffs' case does not depend on the arrangement by which Berry took possession of the wheat, but on the arrangement he made with them. Their contract could only be fulfilled by payment in full for the threshing covered by that arrangement, whether, in fact, defendant had to have that much wheat cleaned to discharge its notes or not. The instruction was rightly refused.

The second refused instruction requested the court to charge that neither Reynolds nor Dougherty had any authority to make contracts or agreements for the Bank of Seneca, or make admissions or promises for it, but only to perform such part of the agreement made by Berry as he entrusted to them. But how would plaintiffs know what part he entrusted to them? Berry testified he told the plaintiffs, in answer to a question as to how they would get their pay if they continued to thresh pursuant to his request, that T. M. Reynolds & Company would be in full charge and would look after all the details. Besides, the memorandum written on one of the mortgages when the bank took charge of the wheat provided that the bank, through its representatives, T. M. Reynolds & Company, would attend to the threshing of the wheat, selling the same and paying expenses, and thereafter those agents conducted all the business connected with cleaning, shipping and marketing the wheat and paying the expense entailed. Said second instruction bore on certain testimony which tended to prove Reynolds and Dougherty had at different times made statements, the tenor of which was that the bank had agreed to pay for the threshing and would have to pay it. Part of this testimony came out in showing why Hill Brothers kept their threshing account against Richardson instead of the Bank of Seneca, a fact which the defendant sought to utilize as evidence of its contention that plaintiffs had no contract with it. The bookkeeper of the defendant testified he kept the

account that way by direction of Dougherty, who said that Reynolds & Company would see the plaintiffs were paid and that the bank was going to pay for the threshing. The evidence that plaintiffs' account was kept in Richardson's name by request of defendant's agents was certainly competent when defendant was trying to make use of that circumstance in support of its defense.

Said declarations of Reynolds and Dougherty were made while they were still acting within the scope of their agency, if the testimony of the plaintiffs that they had had no notice of the bank's relinquishing possession of the wheat on July 15th is true, which was for the jury to decide. Berry himself swore he told the plaintiffs Reynolds & Company would look after the threshing and pay for it; so the admitted declarations and promises pertained directly to their agency, and fell within their authority as Berry had explained it to the plaintiffs. The evidence was, therefore, manifestly competent. Meagher v. Railroad, 14 Mo. App. 499; Peck v. Ritchey, 66 Mo. 114; Eagle Construction Co. v. Railroad, 71 Mo. App. 626.

The fifth refused instruction predicates a defense against plaintiffs' demand for work done before the bank got possession, on the ground that if Berry promised to pay for said work the understanding was not put in writing. We have already discussed that phase of the case.

For the plaintiffs the court instructed the jury that if they believed the bank, on taking possession of the crop through its cashier Berry, arranged with the plaintiffs to continue the threshing and promised to pay for threshing the wheat, they would find the issues for the plaintiffs less the amount already paid them, to-wit, $1,062.04; that if they found from the evidence the price agreed on between the plaintiffs and defendant was seven cents a bushel, that fixed the liability of the defendant at that price; but if no specified price was agreed on, then the plaintiffs, if entitled to recover,

should receive whatever the threshing was reasonably worth, not to exceed seven cents a bushel. That charge is challenged because of the limitation of the amount of payments the jury might allow the defendant.

Defendant asserts that Richardson made a payment of $250 on the threshing of the wheat before Berry took possession, which was not included in the $1,062 plaintiffs admitted receiving. Richardson testified that about two weeks before the plaintiffs began to thresh, he paid them "$250 to apply on the threshing account." This money was advanced to enable plaintiffs to pay freight and other expenses of shipping their machinery. But the plaintiffs had another account against Richardson at that time for threshing oats, and their testimony is that this money was applied as a credit on that account and not on the one he owed for wheat threshing, and that therefore Richardson received the benefit of it.

We find no testimony in the record to contradict what the plaintiffs swore about this payment, for Richardson did not testify that he made any application of the payment and so, of course, plaintiffs had the right to apply it to either account. Coney v. Laird, 153 Mo. 408. If there had been testimony to prove the $250 was paid for threshing wheat, and directed to be applied on that indebtedness, an error would have been committed in the instruction.

Reynolds & Company rendered statements of account to plaintiffs occasionally, and the trial court admitted in evidence two items from those accounts. Defendant assigns this for error because the entries were made subsequent to the wheat passing out of its possession. Now, as heretofore stated, plaintiffs on July 29th made a draft of $2,200 on the Bank of Coffeyville to pay for the threshing, which defendant contends shows plaintiffs were looking to that bank for their pay. Reynolds and Dougherty testified they had nothing to do with that draft; whereas the plaintiffs testified Reynolds and Dougherty induced them to make it. The

admitted items corroborated the plaintiffs as they showed the draft was credited to plaintiffs on Reynolds & Company's books when drawn and charged to them when it was returned dishonored, thus tending to disprove the inference that plaintiffs recognized the Bank of Coffeyville as their debtor by making the draft on it.

Error was not committed in excluding the mortgage given by Richardson to Reynolds, as that was a transaction with which the plaintiffs had nothing to do; and besides, the facts in regard to the mortgage got before the jury by verbal testimony.

As to the alleged error in giving an oral instruction to the jury after they had retired, suffice to say the court did not give any oral instruction. When a verdict was brought in without an assessment of damages, the court rightly refused to receive it and told the jury they must calculate the amount plaintiffs were entitled to recover, but expressly refused to instruct them further.

Defendant insists plaintiffs were wrongly permitted to recover for work done after August 9th when they knew Wettack had possession of the wheat, made an agreement with him that he should pay for subsequent threshing and took the written permission to retain enough wheat to make them secure; and this point seems to be well taken.

Plaintiffs withheld two carloads of wheat pursuant to that agreement, which they testified they finally let go on the promise of Reynolds & Company that it should be shipped to the Bank of Seneca and the threshing paid for. This matter was obscure when the case was here before, as the contract of August 9th was not then in the record. The wheat in those cars belonged to S. P. Race, not to Richardson, and Race had given the Bank of Seneca a mortgage on it, but it was mingled with Richardson's and plaintiffs threshed it along with his. Plaintiffs' counsel argues from those facts that his clients are entitled to hold defendant for threshing

the Race wheat and also for all threshing done after
August 9th.

To recover for this extra threshing, plaintiffs were
allowed to prove, over defendant's objection, another
and different contract from the one pleaded in their pe-
tition, made with Reynolds and Dougherty, as follows:

"Q. I will ask you, after August 9th, if you made
this contract for wheat threshing you did after the 9th
day of August? A. Yes, sir.

"Q. Tell the jury about that? A. We went down
there and found Mr. Race loading that wheat on there,
and we wanted that wheat and he said all right and we
went on and told Reynolds and Dougherty, and they
said that wheat goes to the Seneca Bank, and they said
you let that wheat go and we will see that you get your
money.

"Q. You asked for it and Race agreed to give it
up to you? A. Yes, sir."

That the wheat belonged to Race is immaterial; but
it is material that plaintiffs recovered for threshing
it and other wheat after August 9th, on which date, as
their own testimony proves, they contracted with Wet-
tack to pay for subsequent work, knowing that his bank
had possession and that the Bank of Seneca had nothing
more to do with the wheat.

One of the Hills witnessed the memoranda creating
Reynolds & Company's agency and confining it to the
period that might elapse before the Bank of Seneca
was fully paid. Plaintiffs' argument on this point is
inconsistent with the fourth instruction they asked,
which is as follows:

"4. If you find from the evidence that the defend-
ant on taking possession of the Richardson wheat under
its mortgages, promised and agreed to pay for the
threshing of the same, whether for all the wheat or only
so long as the same was in their possession, then said
bank is liable for all threshing until the plaintiffs were
notified that the bank's mortgage was satisfied and de-

fendant's possession terminated, and you should find for plaintiffs for such amount less the amount paid on same, being $1,062.04.''

That instruction propounds the theory that the plaintiffs' right to hold defendant for threshing ended whenever plaintiffs were notified the defendant's mortgages were satisfied and its possession of the crop terminated, and this was the theory of the trial.

It is plain to us that error was committed in unguardedly admitting this evidence, the tendency of which was to bind defendant for threshing done after August 9th. But the quantity of wheat threshed after that date was definitely proven, to-wit, 3,929 bushels, the cleaning of which at seven cents a bushel amounted to $275 and this sum we will order remitted as the condition of affirmance. This may be slightly unjust to the plaintiffs, for possibly the defendant ought to pay for threshing the Race wheat which it got; but the facts are not before us to enable us to decide that point, as it turns on whether there was authority given to Reynolds & Company to act in reference to the Race wheat or whether their action was ratified. Their original authority had expired and therefore did not *per se* enable them to bind the bank.

It the plaintiffs will enter a remittitur within ten days the judgment will stand affirmed; otherwise it will be reversed and the cause remanded to be retried.

The costs of the appeal must be taxed against the plaintiffs. *Bland, P. J.,* and *Reyburn, J.,* concur.