W. H. BAY, Respondent, v. J. M. BUCK, Appellant.

Springfield Court of Appeals, June 17, 1915.

1. **APPEAL AND ERROR: Theory of Case: Remains Same on Appeal.** Action for labor performed. The words "partner" and "partnership" appeared from time to time in the testimony referring to defendants, but the case was not submitted on the theory that defendants were partners. The case should be tried on the same theory in the appellate court as in the court below.

2. **INSTRUCTIONS: Action for Services: Evidence.** Action against defendants for services rendered in hauling logs. Evidence reviewed and instructions given in the light thereof *held* to have fairly and properly submitted the issue to the jury and that the verdict is supported by the evidence.

3. **CONTRACTS: Promise Without Consideration: Not Binding.** Where a promise was given at the time part payment was made for hauling logs that the promisor would see that the debtor did not get away owing promisee, it was merely a promise without a consideration and not binding.

4. ——: **Promise to Pay for Labor: Evidence.** Action for labor performed in hauling logs. Evidence reviewed and *held* not to show a promise by defendant that if plaintiff would continue hauling, defendant would pay for the hauling already done as well as that done in the future.

5. ——: **Consideration: Original Promise.** Where defendant promised certain persons hauling logs that he would be responsible for the pay if such persons would continue the hauling, this was not a nude pact or a promise to answer for another's debt.

Appeal from Howell County Circuit Court.—*Hon. W. N. Evans,* Judge.

Affirmed (*conditionally*).

*Green & Green* for appellant.

*J. N. Burroughs* for respondent.

FARRINGTON, J.—Action commenced in a justice court upon the following petition:

"W. H. Bay, Plaintiff,

v.

"W. H. Beam and J. M. Buck, Defendants.

"Plaintiff for cause of action states that he was employed by the defendants to haul sawlogs for them at an agreed price of $4.50 per day for himself, wagon and team; that on May 29, 1913, on a settlement, the defendants owed plaintiff the sum of $70.25 thereupon paying plaintiff $50 on said account leaving a balance

at that time of $20.25, which said sum remains due and unpaid.

"Plaintiff further states that he rendered further services for the defendants under said contract as follows: 14 1/2 days for himself, wagon and team, at $4.50 per day on June 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 16th, 17th, 18th, 19th, one-half of the 20th, the 23rd, making a total of $65.25 which plaintiff has earned since said settlement with the credit thereon of $5.85, leaving a balance on the last three weeks' work of $59.40; that the whole of said sum remains due and unpaid, which together with $20.25 which defendants owe him on the settlement as aforesaid, leaves defendants indebted to plaintiff in the total sum of $79.65 for common labor done and performed for which said sum plaintiff prays judgment together with costs of suit."

Judgment by default for plaintiff in the amount prayed. Defendant Buck appealed to the circuit court, where, in a jury trial the same result ensued, and Buck is now the appellant in this court insisting that the evidence in no way tends to establish any liability on his part to plaintiff.

In his brief the appellant bears heavily upon the proposition that the evidence does not tend to establish a partnership relation between himself and Beam. The petition does not allege a partnership between Buck and Beam. But it is held (Smith v. Cain, 180 Mo. App. l. c. 461, 166 S. W. 653, and cases cited) that plaintiff is not required to allege a partnership in an action against several defendants in order to be entitled to prove it; and it is fairly inferable from the evidence that plaintiff was perhaps trying to make the existence of a partnership between defendants stand as one theory upon which he might recover, because the words "partner" and "partnership" appear at intervals in the testimony and plaintiff at one place stated that Buck begun as a partner but kept it a secret

at the start and didn't want everyone to know he was a full partner, tempering the statement immediately afterwards, however, by saying that Buck never told him he was a partner and stating that he had no conversations with Buck. Besides, testimony was given to the effect that Beam told Buck in the courthouse yard just before the first trial of this case that they were partners and that Buck said he didn't understand it that way and "tried to crawfish out of it," and that this was in the presence of plaintiff and two others. However, the case was not submitted on the partnership theory and respondent in his brief expressly disclaims it. The word "partnership" appears only once in the instructions and that was in plaintiff's first instruction in which the court practically assumed that no partnership relation existed between Beam and Buck. The case should be tried on the same theory in this court.

The plaintiff gave testimony supporting the allegations of his petition. He was originally employed by Beam, not by direct negotiations with Beam, but through the efforts of plaintiff's cousin, Frank Bay, and plaintiff and his cousin thereafter worked together. Concerning the seventy dollar settlement of May 29th, plaintiff testified that the fifty dollars paid him at that time came from Buck—that Buck was furnishing the money and Beam was not getting it fast enough and that Buck didn't want to let him have enough to pay him in full; that "Beam said he was giving a mortgage on these logs to Buck and for us not to be afraid, he would see that it was paid." On cross-examination he was asked if he understood that Buck had a mortgage and he answered that he did; that Buck said he would see that Beam didn't get away "owing us anything." "It was like this, he talked like he was safe and he was going to see that we didn't lose anything on account of him having upheld the man, him being a stranger."

Plaintiff's witness Bootman testified that he was also hauling logs for W. H. Beam and J. M. Buck, and that he was having trouble about his pay and went to Buck on the part of all his people that were working and that this was somewhere close to the first of June. He was asked: "And you went on the part of W. H. Bay as well as yourself?" He answered: "Yes, sir." He also testified that Beam and Buck wanted him to go out for more logs and he wanted to know where his pay was coming from "and Buck told me for us to go ahead and get the logs. Wanted me and Bay to go. Q. Which Bay was that? A. W. H. Bay; he was here at the time. He said if I would go get them he would be responsible for my pay. I told W. H. Bay about it and he went with my man out in there and got some logs and they were delivered here in the yards." "Q. Buck did pay you for that work? A. Yes, for my part. Q. Do you know whether or not he paid Bay? A. I don't know."

The plaintiff was then recalled and testified: "Q. You heard Mr. Bootman's statement about a conversation with Buck; did he come and tell you what Buck said? A. Yes, sir. Q. Did you haul logs after that? A. Yes, sir. Q. And haven't been paid for it? A. No, sir." And he testified that his petition showed the dates this hauling was done. Plaintiff also stated that when Buck "got in connection he begun to hold the books and the man couldn't pay because he had a mortgage on it" —meaning, as we take it, that Beam could not pay because Buck had a mortgage on the logs. As corroborative of his theory that he did the June hauling upon the promise of Buck to be responsible for the pay, plaintiff, being asked if he had talked to Buck about this since the rendition of the services, answered: "Yes; I came by there this morning and he told me their intention was to pay this as soon as they sold these logs down here, the ones they have on the yard."

Among other things, the plaintiff's first instruction told the jury that if they found from the evidence that defendant Buck was furnishing money to Beam to carry on the business and that Buck informed plaintiff in person or through others that he would take care of plaintiff's bill for hauling logs or that he would guarantee payment for the same or any part thereof, then in that event the defendant Buck would be liable to plaintiff for such portion of the amount as may have accrued through or under such understanding between defendant Buck and the plaintiff in the event the jury should find there was such understanding. Defendant's instructions submitted the case on the theory that plaintiff could not recover unless he had proven by the greater weight of the evidence that defendant Buck employed him to haul logs agreeing to pay him therefor, or that plaintiff rendered services for Buck at the instance and request of Buck, and that Buck agreed to pay him therefor. We think the instructions fairly and properly submitted the issue to the jury and that the verdict is well supported by substantial evidence. However, $20.25 of the amount allowed must be remitted. This is the amount left over from the seventy dollar settlement of May 29th. There is nothing to connect the defendant Buck with that debt. The alleged statement of Buck at the time the fifty dollars was paid plaintiff, that he would see that Beam didn't get away ''owing us anything'' was certainly no more than a promise without consideration. The evidence herein fails to show a promise made by Buck that if plaintiff would continue hauling he would not only pay for future *but for back hauling as well,* and the case therefore differs in this respect from that of Hill Bros. v. Bank of Seneca, 100 Mo. App. l. c. 239, 240, 73 S. W. 307.

It is true, the evidence is in conflict; however, Buck was the only witness on his side of the case and the fact that he gave a different version of the transac-

tion does not operate to destroy the substantial character of plaintiff's evidence after verdict. The principal involved is as old as the law of assumpsit. The evidence is that Buck said for Bay to haul some logs and he would be responsible for his pay—not a *nude pact* or that he would answer for the debt of Beam. [See, Macfarland v. Heim, 127 Mo. 327, 29 S. W. 1030.] Bay performed the service and Buck refused to live up to his agreement.

If plaintiff within ten days from the date of the filing of this opinion files with the clerk of this court a written remittitur of $20.25 of the judgment, the same will be affirmed; otherwise, an order will be entered reversing the judgment and remanding the cause for error in the amount of the verdict. *Robertson, P. J., and Sturgis, J.,* concur.