JOHN F. HOENE, ADMINISTRATOR C. T. A. OF ESTATE OF BERTHA SPORING, DECEASED, APPELLANT, v. EDWARD GOCKE REAL ESTATE CO., A CORPORATION, RESPONDENT.—91 S. W. (2d) 137.

St. Louis Court of Appeals. Opinion filed March 3, 1936.

*John T. Sluggett, Jr.* for appellant.

*Lee W. Grant* and *Barton N. Grant* for respondent.

HOSTETTER, P. J.—This suit was instituted on the 14th day of November, 1933, in the Circuit Court of the City of St. Louis. The

allegations in the amended petition on which the cause was tried were substantially as follows:

That defendant, a Missouri corporation, having its place of business in the City of St. Louis, Missouri, was engaged in the business of owning, buying and selling real estate, promissory notes secured by deeds of trust on real estate, mortgages and other securities; that sometime during the month of September, 1929, plaintiff purchased from defendant a certain negotiable promissory note for $4,000 and six semi-annual notes for interest thereon, all of said notes being dated August 2, 1929, and executed by Joseph E. Robertson and Cora Lee Robertson, his wife, and payable to the order of O. J. Christmann, the principal note being due and payable three years after date and the six semi-annual interest notes, each for the sum of $120, being due and payable respectively in six, twelve, eighteen, twenty-four, thirty and thirty-six months after date, all of said notes having been endorsed without recourse by said payee, O. J. Christmann, and all secured by a deed of trust bearing date of August 2, 1929, made by said Robertson and wife to Edward G. Gocke, trustee, covering Lot 17, in Block 8 of Vinita Park in St. Louis County, Missouri, duly recorded on September 4, 1929, in the office of Recorder of Deeds of St. Louis County; that at said time as a part of the agreement and contract of sale between the plaintiff and the defendant, the latter, through its agents, agreed to and warranted and represented to plaintiff that the money paid by plaintiff to defendant for said notes and deed of trust would be used by defendant to pay for work, labor and materials used in the erection and construction of a seven room and bath brick bungalow which was at that time being erected and constructed on said real estate and that defendant would disburse and pay said money as the work progressed only for work, labor and material actually performed and furnished on said improvements and that said $4,000 would be ample and sufficient to pay for all of said work, labor and materials for the completion of the building and that there would be no lien on said property prior to or superior to said deed of trust and that defendant would pay and satisfy any mechanic's or materialman's lien on said property and also would pay all workmen and materialmen in full for their work, labor and material furnished and used in the erection and construction of said building and improvements on said property and that as a part of said agreement and contract of sale defendant promised and agreed that the security afforded plaintiff by said deed of trust would not be affected or impaired by any mechanic's lien or materialman's lien on said property; that plaintiff was induced to and did purchase, receive and accept said notes and said deed of trust and paid defendant therefor the sum of $4,000 less $50 commission, because of defendant's representations, assurances, warranties and promises and solely be-

cause defendant agreed that the said statements, representations, assurances, warranties and promises were a part of said agreement and contract of sale and defendant received and accepted from plaintiff the said sum of $3950 for said notes and deed of trust pursuant to such agreement and contract of sale between it and the plaintiff; that defendant thereafter violated and breached said agreement and contract of sale as follows, to-wit: that during the period commencing August 27, 1929, and ending November 12, 1929, the Boeckeler Lumber Company, a corporation, furnished to J. E. Robertson, at his request, certain lumber, building material, and labor, of the value of $1077.99, for the residence building and garage that was being erected on said real estate by said Robertson and that such lumber, building material and labor did actually go into such improvements on said real estate and that said Lumber Company was not paid for the same and that, on February 28, 1930, it filed a mechanic's lien and itemized account in the office of the clerk of the Circuit Court of St. Louis County, Missouri, and thereafter, on May 28, 1930, instituted suit in the Circuit Court of St. Louis County against said Robertsons and all others interested in said real estate, including the unknown owner or owners of said notes so purchased by plaintiff of defendant, which proceedings, upon a hearing of the cause, resulted in a judgment on June 6, 1932, establishing a mechanic's and materialman's lien upon such said property superior to the deed of trust purchased by plaintiff from defendant as aforesaid; that thereafter an execution was issued upon said judgment and after due advertisement the said real estate was offered for sale under said judgment at the court house at Clayton on August 14, 1933, by the sheriff of St. Louis County and that plaintiff was compelled to and did purchase the property for the sum of $1496.73 in order to protect her interest in said property, and paid that amount to the sheriff and received the sheriff's deed to same; that plaintiff had no knowledge of the furnishing of such lumber, material and labor by said Lumber Company for said improvements on said real estate and had no knowledge that said Lumber Company had not been paid for same and no knowledge of the mechanic's lien and no knowledge of the institution of the suit or its pendency in court or of its being set for trial or that it had been tried or any judgment rendered until shortly before the sale of the property as aforesaid; that the fair and reasonable market value of the property at the time it was sold by the said sheriff of St. Louis County did not exceed the sum of $4,000; that prior to the sale of such said property by said sheriff plaintiff demanded and requested that the defendant pay and satisfy the judgment that was entered in said mechanic's lien suit, but that defendant failed and refused to pay and satisfy said judgment and failed and refused to pay plaintiff the amount paid by her to the defendant for said notes and deed of

trust, to-wit: the sum of $3950 before the sale of said property by said sheriff, although requested to do so by plaintiff, and still fails and refuses to pay plaintiff the $1496.73 which plaintiff paid to the sheriff as aforesaid; that plaintiff asked judgment for said amount of $1496.73.

The answer contained an admission of defendant being a corporation and a general denial of the other allegations contained in the petition.

The testimony tended to support the allegations contained in the petition. It was shown by the testimony that the defendant was incorporated on January 1, 1924, under the name of Edward Gocke Real Estate Company; that Edward Gocke was President and John H. Armbruster, vice-president, and O. J. Christmann was secretary and treasurer of the corporation from the date of its incorporation and including the time covered by the matters involved in this suit; that there were no other officers or directors of the corporation; that the corporation was engaged in the general real estate business, which included selling homes and making loans and selling them, collecting rents and selling lots; that vice-president Armbruster controlled and sanctioned the sale of homes and lots, made deeds of trust and sold them to clients of the corporation and had charge as manager of the loan department and contacted persons who wanted to make loans, inspected, passed on property values, made all contracts with persons who bought the loans and looked after the titles, both in making the loans and in selling the notes and deeds of trust incident to defendant's business; that President Gocke did not take charge of defendant's business or stay in the office of the corporation; but that his own personal matters took practically all of his time and that vice-president Armbruster was in executive control and management of the office; that the board of directors did not at any time place any restrictions or limitations upon any of the said officers or employees of the corporation; that in its usual course of business the corporation made loans and sold deeds of trust and usually made what is known as "building loans," that is, when a party would come in and make application for a "building loan" the usual method of procedure would be the discussion of the location of the lot, the plan of the house and an estimate of the amount of money required to complete the building in its entirety and the loan would be made on that basis; that in handling building loans it was the custom and practice for the corporation to pay the material bills to the firm which furnished the material, and also would pay for the labor in the construction of the building; that vice-president Armbruster prescribed, managed and dictated the policy of the corporation with respect to the sale of its securities and deeds of trust, in particular, and made all contracts incident thereto; that in July, 1929, the corporation received a

letter from plaintiff, Bertha Sporing, advising that she had $2500 to place on a deed of trust. Plaintiff's home was at Coral Gables, Florida, and several letters passed between her and defendant prior to the time she came to Missouri and examined the property in company with Mr. Armbruster and had interviews with him representing the defendant, resulting in closing their negotiations for her purchase of the said notes secured by a deed of trust on the property described therein.

The pertinent portions of the correspondence are as follows:

Defendant, in its letter to plaintiff dated July 27, 1929, wrote as follows:

"We are glad to have your advise that you would have about $2500.00 to place with us and will say that we have a dandy $2500.00 1st Deed of Trust on a 4-room frame house on a very large tract of ground, right off of Lackland Rd. We also have a $2800.00 Deed of Trust on a 4-room brick bungalow, which is just about three months old, right off of the St. Charles Rock Road, and we also have a application for a $3000.00 loan which we will make next week for a 5-room brick house and another application for a 5-room and sun-parlor brick house in Vinita Park for $3500.00 which we will make and you can rest assured that all of these loans are first class and you can take them with our assurance that when you come up next month and we show them to you at that time, if you are not entirely satisfied we will be glad to exchange them on another loan, so you can send us your remittance for whatever amount you might have at this time, and rest assure that we will take good care of you, just like we always have done and always will continue to do.

"Mr. Armbruster is on his way home and we expect him back here by the time you get this letter, and it of course will be referred to him, so that your wants will be taken care of in good shape.

"With kind personal regards from all of the young ladies in the office, we beg to remain,

"Very truly yours,

"Edward Gocke Real Estate Company."

And, in its letter to plaintiff of date July 31, 1929, defendant wrote as follows:

". . . . We are looking forward to your visit here and trust that when you come you will be entirely satisfied with all the loans we have sold you, as we stake our judgment of many years knowledge of values that they are good loans. . . . ."

In plaintiff's letter to defendant dated July 30, 1929, she wrote as follows:

"Yours of July 27 to hand. It seems to me all these loans you have submitted are rather large amounts for so small a house. The loan in Vinita Park at $3,500.00 appeals more favorable than any of the

rest; however, I should think $3,000.00 would be an ample amount on a five-room house.

"I am enclosing a check for $2,500.00 for this loan, and when I come to St. Louis, and it proves satisfactory, I will pay the balance . . . ."

In a letter dated August 27, 1929, defendant wrote plaintiff as follows:

"The man for whom Mr. Robertson had the contract to build his house in Vinita Park has decided to make it into a 7 room and bath brick bungalow and to have the building built with a 13-inch brick wall and for that reason requires $4000.00 loan instead of $3500.00 loan.

"We felt sure that you would like it even better to have a $4000.00 loan on a 13-inch brick wall two-story house with 7 rooms and tile bath, etc., rather than $3500.00 on a 5 room one-story brick, so we have had the papers made up accordingly and we enclose herewith the $4000.00 principal note and the six semi-annual interest notes, all dated back to August 2nd which was as we promised.

"We also enclose statement of the transaction which we trust is entirely satisfactory to you.

"I'm sure the loan as now made will be even more well secured than would the $3500.00 loan he intended to make and I will be glad to show this to you when you come up.

"The balance of the papers will be sent you in regular order."

In a letter dated September 18, 1929, plaintiff wrote to defendant as follows:

"Just in receipt of your lines, as I have been out of the City, had expected to hear from you for some time regarding this reinvestment, and as I am going to leave next week for St. Louis, I will see you personally regarding this investment."

Plaintiff testified that she was a resident of Coral Gables, Florida; that following the exchange of letters passing between her and the defendant she arrived in St. Louis sometime in September, 1929, and went to the defendant's office and met Mr. Armbruster and he accompanied her to Vinita Park to show her the property described in the deed of trust; that she, on inspection, found that there was a building there in the course of construction; that it was under a roof but was not finished; that she asked Mr. Armbruster how about mechanic's liens and materialmen's liens, and he said that if there would be any they would take care of them; that she was not to worry about anything, that everything would be taken care of with this $4,000 mortgage; all liens would be paid by them if there were any.

In response to a question as to what else did Mr. Armbruster say, if anything, she testified:

"Well, he said that he would take care of any liens—mechanic's liens—that they would take care of them; that I would not need to worry, but they would take care of them as they have done before."

Also the following questions and answers were made:

"Q. Was anything else said Mr. Armbruster at that time in connection with this deed of trust? A. No; just said they would take care of me; there would be no liens that I would have to pay; that they would take care of any liens against the property.

"THE COURT: That is what he said? A. Yes, that is what he said, that the Edward Gocke real estate firm would take care of any liens, mechanic's or materialmen's liens. That my mortgage would come prior to any other lien.

"Q. And after he said these things, what, if anything, did you say? A. I said that if it would be a good and marketable mortgage that I would take that, and paid him the $4,000; if there would be any mechanic's or materialmen's liens that my mortgage would come prior to them. That there would be no mechanic's liens or materialmen's liens."

She further testified that thereafter she gave defendant a check for $1450 for the balance of the purchase price of the deed of trust; that sometime in August, 1933, she, for the first time, learned that Boeckeler Lumber Company had filed a mechanic's lien against the property described in the deed of trust and immediately upon receiving this information she came to St. Louis from her home in Coral Gables, Florida, and upon her arrival she went to the office of Boeckeler Lumber Company and was there told by the parties in charge that the property would be sold to satisfy the lien unless the lien were paid; that she then went to see Mr. Gocke, president of the defendant, and demanded that they pay off the lien or take back the deed of trust and refund to her the money that she had paid for it, but that Mr. Gocke refused to do either; that this conversation with Gocke was prior to the sheriff's sale of the property; that she attended the sheriff's sale at the courthouse in St. Louis County and the sheriff accepted her bid for $1496.73 as the highest bid for the property and that she thereafter paid said sum to the sheriff and the sheriff made her a deed to the property; that after the sheriff's sale she again went to see Mr. Gocke and demanded that he relieve her of the property and told him if he would return her the money that she had paid to defendant for the deed of trust and the money that she had paid to the sheriff for the real estate she would convey the real estate to him, but that he refused to do so and suggested that she go and see his lawyer.

Mr. Armbruster, vice-president of the defendant and manager of its loan department, testified that the letters passing from defendant's office to plaintiff were written by him except one written by secretary

and treasurer O. J. Christmann, during his absence; that plaintiff called at the office in September, 1929, and on that occasion asked him to take her out to the property described in the deed of trust and that he did so and showed the property to her; that on seeing the property she said: "Why, the house isn't done; then there would be some mechanic's liens on it," and that he said: "You needn't to worry about that, you have made a lot of building loans and we have always paid. If there were building liens on any of the loans you have made we have always paid them and we will do the same in this case, so you won't have to worry about that;" that he told her that same thing almost every time when she came up; continuing the witness had said: "Yes, I had quite a little conversation with her; she wanted to be sure about that fact that there would be no liens and if there would that we would pay such liens so that she wouldn't have anything to worry about; she had done business with us many years. She didn't ask me to put it in writing."

"Q. Now, was there anything else said by you at the time? A. Well, with that assurance she said: ' "That will be all right then; I will take the loan.' "

Witness Armbruster further testified that plaintiff's check for the $2500 sent from Florida was received and collected by defendant and that after he and the plaintiff had visited and inspected the property that the check for $1450 was given to defendant by plaintiff, which completed her payment of the purchase price for the $4,000 principal note and the interest notes secured by the deed of trust and that in a letter from the defendant to the plaintiff, dated October 14, 1929, the note and deed of trust were mailed to her after she returned to her home in Florida, following her visit to St. Louis.

The officers of defendant corporation also admitted that none of them gave plaintiff information about the filing of the Boeckeler Lumber Company's mechanic's lien claim or the suit it subsequently filed, or the date of trial at any time, although two of the officers were defendants in the mechanic's lien suit and were served with summons, to-wit: President Edward Glocke, who was the trustee in the deed of trust, and secretary and treasurer, O. J. Christmann, who was the payee in the notes and, the third officer, vice-president Armbruster, testified that the reason he didn't notify plaintiff about the mechanic's lien suit was because he thought that an attorney who had looked after some business for her in the past would notify her and take care of the lien suit, but later found that the attorney had died and that nobody had attended to it.

At the close of all the testimony, the defendant offered an instruction in the nature of a demurrer to the evidence, which the court refused. The jury returned a verdict in favor of the plaintiff for the sum of $1496.73 on September 11, 1934, on which verdict a judgment

was rendered on same date. In due time defendant filed its motion for a new trial, which motion the court sustained on the ground that the promise of defendant was an oral one to answer for the debt, default or miscarriage of the maker of the notes and deed of trust, and, therefore, was within the statute of frauds. From which action of the court plaintiff, in due time, appealed, bringing the cause to this court for review.

After a careful review of the testimony and the intention of the parties at the time vice-president Armbruster made the promise to plaintiff on behalf of the defendant that they would pay such liens if there should be any and that upon such assurance plaintiff replied, "That will be all right then, I will take the loan," we have reached the conclusion that the trial court, in the first instance, correctly ruled on defendant's instruction in the nature of a demurrer to the evidence and properly submitted the case to the jury, and that it fell into error when it subsequently sustained defendant's motion for a new trial and set aside the judgment previously rendered in favor of plaintiff.

The question of when an oral promise falls within or without the statute of frauds has been the subject of much discussion and divergence of opinion in the courts. We regard the promise made to plaintiff by defendant's officer in the instant case to be an original and independent undertaking and a part and parcel of the contract of sale made by the defendant to plaintiff of the notes and deed of trust in controversy. Defendant's oral promise to pay the mechanic's and materialman's lien was in the very warp and woof of the contract entered into between the defendant and the plaintiff, resulting in the purchase of the securities which defendant was intent on selling to her.

In addition thereto, defendant was benefited by the making of the promise to indemnify plaintiff against all mechanic's and materialmen's liens against the property covered by the deed of trust and to pay same, if there should be any, in that it enabled it to consummate the sale of the notes and deed of trust.

In Wahl v. Cunningham, 320 Mo. 57, l. c. 77-78, our Supreme Court en banc, in the adoption of an opinion written by Commissioner Seddon, unanimously approved the following pronouncement therein contained, viz.:

"The better and sound rule, we think, is that a promise of indemnity may or may not fall within the statute, depending on whether the promise is an original and independent undertaking, or whether it is a collateral undertaking; if the former, it does not fall within the statute; if the latter, it does. Whether the promise of indemnity is an original undertaking, or whether it is a collateral undertaking, is to be determined from the intention of the parties at the time the promise is made, as disclosed by the language or expressions used,

the situation of the parties, and the circumstances surrounding the transaction, aided by the application of the accepted tests or, rules above stated. [Davis v. Patrick, 141 U. S. 479; Johnson v. Bank, 60 W. Va. 320; Harris v. Frank, 81 Cal. 280; Atlas Lumber & Coal Co. v. Flint, 20 S. D. 118; Elder v. Warfield (Md.), 7 Harr. and J. 397.]

"Therefore, we are of opinion that our prior holdings in Bissig v. Britton, Hurt v. Ford, and Gansey v. Orr, supra, should no longer be followed insofar as they may be authority for a rule or doctrine in this State that every and all promises or contracts of indemnity fall within the Statute of Frauds and must therefore be in writing, regardless of whether such promises be original and independent undertakings between promisor and promisee, or whether they be merely collateral undertakings."

The above pronouncement followed a very lengthy, learned and exhaustive review of the authorities both foreign and domestic as well as text writers on this question.

The trial court in sustaining defendant's motion for a new trial based its action on the case of Swarens v. Pfnisel et al. (Mo. Sup.), 26 S. W. (2d) 951. There is, in our opinion, however, a marked difference between the Swarens case, and the instant case. In the Swarens case the suit was for recovery for surgical services rendered the defendant Pfnisel who was related to and boarded with Emma Amel. Pfnisel was injured in a gasoline explosion which occurred in a cleaning establishment where he worked, and was taken to the city hospital. His co-defendant in the suit, Emma Amel, upon learning of the accident, engaged the physician to go and treat Pfnisel, advising him that she would pay the bill. It appeared that the patient was unconscious when the physician first began to treat him and that the charge for surgical services was made against Pfnisel and not against Emma Amel and he never rendered a bill to Mrs. Amel at any time. Pfnisel had some insurance. The insurance company settled with him, but the doctor's bill was never paid. Then the physician sued both Pfnisel, the patient, and Emma Amel. The Supreme Court held that under the facts of the case the physician did not look alone to Emma Amel for his pay, that he considered defendant Pfnisel liable; that he sued him and obtained judgment against him and, therefore, Mrs. Amel's promise was, by reason of her being merely surety and guarantor, within the statute of frauds and no recovery was allowed against her.

In the instant case it appears that the sole reliance and credit given by plaintiff was the promise made by defendant, through Mr. Armbruster, and no credit or reliance was given by her to the Robertsons, the makers of the deed of trust. As a matter of fact, under the testimony, there were no mechanic's liens against the property at the time defendant made its promise to pay the mechanic's liens which

might be placed against it in the future, and, as a matter of fact, there was no promise in the deed of trust on the part of the Robertsons that they would pay any future mechanic's liens that might be established against the property. They, in the deed of trust, guaranteed that the property was free and clear of mechanic's liens and that was true at the time defendant made its promise to plaintiff. We quote the following from the deed of trust in respect to these mechanic's liens:

"And the said party of the First Part hereby guarantee to the said party of the Third Part that the said property herein described is free and clear of mechanics' liens; and said party of the First Part further agrees that, in case any liens should hereafter be filed against said property, after the execution of this Trust, then, and in that case, said liens so filed shall have the same force and effect as if any one of said notes, hereinbefore described, shall have become due and payable, and all the covenants and agreements herein provided shall be in full force and effect, and carried out as if said notes be actually due and payable."

And the evidence shows that the plaintiff knew nothing about the contents of the deed of trust as she had never seen it at the time the promise was made by defendant, and, in fact, never had an opportunity to see it or know what was in it until it was mailed to her on October 14, 1929, and, as further emphasizing the idea that she, in purchasing the notes and deed of trust from the defendant relied solely on defendant's promise, was the fact that after she discovered that the lien had been established by a suit and the property was about to be sold she came from her home in Florida to St. Louis and promptly requested defendant to make good its promise, thus showing that she relied solely upon defendant's promise to take care of these mechanic's liens and pay them. And there was nothing shown in the record that she ever treated the Robertsons, the makers of the notes, as being liable to her on account of the mechanic's liens.

The court, in the Swarens case, discussed the case of Hill Brothers v. Bank of Seneca, 100 Mo. App. 230, 73 S. W. 307, an opinion written by Judge GOODE. In that case a bank holding a chattel mortgage on some wheat promised plaintiffs (the threshers) to pay for the threshing of the wheat mortgaged to it and included a promise to pay for the threshing of wheat previously threshed under contract with the mortgagor and it was held that such promise on the part of the bank was not within the statute of frauds because there was a consideration passing to the bank making the promise, the court using this language:

"The contract in this case so far as appears, was made for the exclusive benefit of the bank and it received the benefit in the continued work of the plaintiffs. In such a case it is wholly immaterial that in

consequence of the performance of the contract the debt of someone else will be paid and immaterial, too, whether or not the original debtor remains liable.''

It is urged in defendant's brief that vice-president Armbruster had no authority to make the promise to plaintiff and that the defendant corporation was not bound thereby. We disagree with this contention and think that the evidence, which we have set out somewhat fully, shows that he had full authority to act for the corporation in the transaction between it and the plaintiff. A corporation can act only by and through live agents.

In a suit brought by the publishers of certain newspapers in the State of Louisiana to enjoin the enforcement of a two per cent license tax, in addition to ordinary taxes, on their gross receipts for the privilege of engaging in such business under the provisions of a law enacted by the Legislature of that State at the instance of the late Senator Huey P. Long, the U. S. Supreme Court in an opinion promulgated on February 10, 1936, holds *inter alia* that a corporation is a ''person'' within the meaning of the equal protection and due process of law clauses of the federal constitution and cites certain of its former rulings in support of such holding. If we could extend this fictional, figurative personage idea and endow it with some measure of understanding we might visualize this corporate ''person'' as suffering a few pangs of its corporate heart and shedding a few sad tears from its corporate eyes and bowing its corporate head in humiliation and sorrow on account of the many broken promises made by live, sentient humans in its name.

It will be noted that witness Armbruster, vice-president of defendant corporation, after testifying that he promised plaintiff to protect her and pay off any liens which might arise, remarked, ''she didn't ask me to put it in writing.''

It is also urged in defendant's brief that the action of the trial court in sustaining its motion for a new trial can be upheld on the ground that the alleged oral promise was that defendant would pay any mechanic's lien which was superior to the Robertson's deed of trust, which was purchased from defendant by plaintiff and avers that the mechanic's lien in controversy was not superior to said deed of trust.

We are unable to find merit in this contention. The contract itself did not specify that it applied *only* to such mechanic's liens as might be superior to the deed of trust, but included any and all mechanic's liens. But, assuming that it only applied to mechanic's liens which were superior to the deed of trust, we still think the contention is without merit. The record shows that in the mechanic's lien suit the court rendered a judgment decreeing the mechanic's lien as having

priority over the deed of trust, and, therefore, that question has become *res adjudicata.*

But defendant urges that, plaintiff not having been made a party defendant by name in the mechanic's lien suit, such judgment is not binding on her. While it is true that she was not proceeded against by name in said suit, but she was proceeded against as "the unknown owner" of the notes described in the Robertson deed of trust and was brought under the jurisdiction of the court by a proper order of publication and the makers of the deed of trust (J. B. Robertson and Cora Lee Robertson), the trustee (Edward Gocke), and the payee in the notes, the beneficiary in the deed of trust (O. J. Christmann), all were named parties defendant and were brought in by personal service of summons.

It was impossible to learn from an inspection of the record to whom the notes had been transferred by O. J. Christmann and the plaintiff in the mechanic's lien case made every one parties by name, as far as ascertainable, who had any interest in the real estate described in the deed of trust.

We think that under this condition of the record she became bound by the judgment rendered. [Redlon v. Badger Lumber Co., 194 Mo. App. 650, 189 S. W. 589; Evans v. Dockins (Mo. App.), 40 S. W. (2d) 508, l. c. 509.]

It appears from the record that plaintiff had fully performed her part of the contract in respect to making the purchase of the notes and deed of trust from defendant following the latter's promise to take care of and pay the mechanic's and materialmen's liens which might arise and paid to defendant $1450, the remainder of the purchase price.

In the letters written to plaintiff by defendant, particularly the ones dated July 27, 1929, and July 31, 1929, and in her reply wherein she enclosed her check for $2500 and promised to pay the balance when she came "to St. Louis and it proves satisfactory," the groundwork was laid whereby defendant's oral promise to pay the liens was potent in consummating the sale of the securities.

The fact that plaintiff made full performance of her contract is an important factor in determining that the promise of defendant in respect to the mechanic's liens was not within the statute of frauds. [Missouri State Life Insurance Company v. Early (Mo. App.), 13 S. W. (2d) 1097; Walter v. Whitten (Mo. App.), 38 S. W. (2d) 480, l. c. 482; Hart v. Riedel (Mo. App.), 51 S. W. (2d) 891.]

The consummation of the sale of the notes and deed of trust was a positive benefit to the defendant and enabled it to obtain the cash and with it liquidate the loan it had previously made to the Robertsons and secured to it its profit in making the sale of the securities. This is an important factor in determining the promise made by de-

fendant to be an independent one and not within the statute of frauds. [Rossin v. Rice (Mo. App.), 87 S. W. (2d) 213; Brown et al. v. Brown, 47 Mo. 130; Hale v. Stuart, 76 Mo. 20; Winn v. Hillyer, 42 Mo. App. 139; Armstrong v. First National Bank (Mo. App.), 195 S. W. 562; Wahl v. Cunningham, 320 Mo. 57, 6 S. W. (2d) 576, 67 A. L. R. 489; Robertson Bros. v. Garrison's Estate (Mo. App.), 21 S. W. (2d) 202; Mertens v. McMahon (Mo. App.), 28 S. W. (2d) 456.]

It is therefore ordered that the action of the trial court in sustaining defendant's motion for a new trial and in setting aside the judgment, be, and the same is, hereby reversed and the cause is remanded with directions to reinstate the judgment in favor of the plaintiff and against the defendant for $1496.73 as of the date of its original rendition, to-wit: September 11, 1934. *McCullen, J.,* concurs; *Becker, J.,* not sitting.